**Case No. 14-40931**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

RAYMOND RABE AND IRMA RABE,

Plaintiffs – Appellants

v.

WELLS FARGO BANK, NA,

Defendant – Appellee
_____

Appeal from the U.S. District Court
Eastern District of Texas, Sherman Division
USDC No. 4:11-CV-787

_____

**REPLY BRIEF OF APPELLANTS
RAYMOND RABE AND IRMA RABE**
_____

J.B. Peacock, Jr.
David M. Vereeke
**GAGNON, PEACOCK & VEREEKE, PLLC**
4245 N. Central Expressway
Suite 250, Lock Box 104
Dallas, Texas 75205
Telephone:  (214) 824-1414
Facsimile:   (214) 824-5490

**ATTORNEYS FOR APPELLANTS**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................... i

INDEX OF AUTHORITIES ................................................................................ ii

REPLY ARGUMENT AND AUTHORITIES ..................................................... 1

ISSUE 1: The Rabe's breach of the Note does not bar them from a breach of contract claim against Wells Fargo regarding the HUD regulations. ............................................................................................... 1

ISSUE 2: Wells Fargo Breached the Deed of Trust Contract by Violating the Provisions of the Fair Housing Act and Violated HUD Regulation 24 C.F.R. 203.604(b). ..................................................... 3

ISSUE 3: Wells Fargo violated the Texas Debt Collection Practices Act ("TDCA"). ..................................................................................... 6

   Sub-Issue 3A: TDCA §§ 392.304(a)(19) and 392.304(a)(8).. .............. 6

   Sub-Issue 3B: TDCA § 392.301(a)(8) .................................................. 8

ISSUE 4: Suit to Quiet Title and Trespass to Try Title and Specific Performance. .................................................................................... 9

PRAYER ............................................................................................................. 10

CERTIFICATE OF SERVICE .......................................................................... 11

CERTIFICATE OF COMPLIANCE ................................................................ 11

# **INDEX OF AUTHORITIES**

**CASES**

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984) ..................................................................................3, 4, 6

*Franklin v. BAC Home Loans Servicing, L.P.,* No. 3:10-cv-1174-
   M, 2011 WL 248445 (N.D. Tex. Jan. 26, 2011) ...................................................2

*Gatling v. CitiMortgage, Inc.,* No.H-11-2879, 2013 WL 1625126
   (S.D. Tex. Apr. 15, 2013) ..................................................................................2

*Hernandez, et al v. U.S. Bank, N.A., et al.,* 2013 WL 6840022
   (N.D. Tex. Dec. 27, 2013) ................................................................................1

*Kersey v. PHH Mortg. Corp.*, 682 F. Supp. 2d 588 (E.D. Va. 2010)........................5

*Miller v. CitiMortgage, Inc., No.* 3:11-cv-2786-l, ____ F. Supp. 2d
   ____, 2013 WL 4766808 (N.D. Tex. Sept. 5, 2013) ..........................................2

*Sanchez v. Bank of America, N.A., et al*, Case 3:14-cv-02571-B,
   Memorandum Opinion and Order (N.D. Tex. Jan. 30, 2015) .............................2

*Voth v. Fed. Nat'l Mortg. Ass'n*, No. 3–10–CV–2116–G–BD, 2011
   WL 1897759 (N.D. Tex. Apr. 22, 2011) ............................................................8

*Wells Fargo Bank v. Isaacs*, 2010 WL 4884447 (Ohio Ct. App.
   2010) ..............................................................................................................4, 5

**RULES/STATUTES**

24 C.F.R. 203.604 ...............................................................................3, 4, 5, 6

Tex. Fin. Code §392.301...................................................................................8, 9

Tex. Fin. Code §392.304....................................................................................6

**OTHER AUTHORITIES**

U.S. Dep't of House & Urban Dev., General Servicing Frequently Asked Questions, http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/nsc/faqgnsrv ............................................................................. 4

## REPLY ARGUMENT AND AUTHORITIES

**Issue No. 1:** **The Rabes' alleged breach does not bar their breach of contract claim against Wells Fargo regarding the HUD regulations.**

Wells Fargo argues that any breach by Wells Fargo of the Deed of Trust contract occurred after the Rabes' breach, and that the Rabes are therefore barred from bringing a breach of contract claim based on violations of the HUD regulations. However, this argument ignores the plethora of case law cited to by the Rabes in their Appellants' Brief.

Specifically, as stated in the Rabes' Appellants' Brief, the contractual terms regarding the HUD regulations that the Rabes allege were breached are terms that would come into effect only where the lender claims a default and pursues acceleration. That is, where the borrower fails to make payments. *Hernandez, et al v. U.S. Bank, N.A., et al.,* 2013 WL 6840022, (N.D. Tex. Dec. 27, 2013). The U.S. District Court for the Northern District of Texas recently held that a breach of contract claim based on HUD violations is not barred by a previous default. *Sanchez v. Bank of America, N.A., et al*, Case 3:14-cv-02571-B, Memorandum Opinion and Order (N.D. Tex. Jan. 30, 2015). The court in *Sanchez* reasoned that the specific HUD regulations at issue presuppose that the borrower is in breach of his or her contractual obligation in that they require the lender to take certain actions to help the borrower avoid foreclosure *after* he or she has defaulted on his or her mortgage. *Sanchez v. Bank of America, N.A., et al*, Case 3:14-cv-02571-B,

Memorandum Opinion and Order (N.D. Tex. Jan. 30, 2015); *Gatling v. CitiMortgage, Inc.,* No.H-11-2879, 2013 WL 1625126, at *6 (S.D. Tex. Apr. 15, 2013).

> The U.S. Northern District likewise reasoned in the *Franklin* case:
>
> The issue is whether Plaintiff can maintain a cause of action for [Defendants'] breach of its obligations under the [Deed of Trust], even though Plaintiff did not tender full performance. It is illogical for the Court to conclude that Plaintiff cannot enforce [Defendants'] obligations, assumed to be contractual, which arise after Plaintiff's default merely because Plaintiff is in default. If that were appropriate, then the [alleged contractual notice provisions] would become practically meaningless.

*Franklin v. BAC Home Loans Servicing, L.P.,* No. 3:10-cv-1174-M, 2011 WL 248445, at *2 (N.D. Tex. Jan. 26, 2011); *accord Miller v. CitiMortgage, Inc.,* No. 3:11-cv-2786-l, ____ F. Supp. 2d ____, 2013 WL 4766808, at *6 (N.D. Tex. Sept. 5, 2013). The same reasoning should be applied here. If the Court were to follow Wells Fargo's reasoning, it would be impossible for the HUD regulations included in the Deed of Trust to ever be enforced because they all involve a default situation. As the Northern District Court of Texas stated, this reasoning would indeed be "illogical," and the HUD regulations would be "practically meaningless." *Franklin v. BAC Home Loans Servicing, L.P.*, WL 248445, at *2. Therefore, the Rabes' alleged initial default does not bar them from bringing their breach of contract claim based on Wells Fargo's violation of the HUD regulations incorporated in the Deed of Trust contract.

2

**Issue 2:     Wells Fargo Breached the Deed of Trust Contract by Violating the Provisions of the Fair Housing Act and Violated HUD Regulation 24 C.F.R. 203.604(b).**

Appellee's Brief further argues that even if the Rabes' breach of contract claim should proceed, Wells Fargo did not violate the HUD regulations. Specifically, Wells Fargo contends that it "was not required to conduct a face-to-face meeting" pursuant to 24 C.F.R. 203.604(c)(2). (Appellee's Brief, pg. 5). Wells Fargo claims that there is ambiguity regarding this HUD regulation—specifically whether a "servicing office" needs to be located within 200 miles of the property, and not simply a "branch office" of the servicer as the Rabes contend. Wells Fargo further asserts that *Chevron* deference should be applied to HUD's Frequently Asked Questions (FAQs) section on its website regarding the meaning of 24 C.F.R. 203.604(c)(2). (Appellee's Brief, pg. 7-8). Finally, Wells Fargo claimed it "set forth evidence, which the Rabes did not dispute, that the [Wells Fargo] branch office nearest their residence was not a 'servicing branch'[.]" (Appellee's Brief, pg. 6).

HUD regulation 24 C.F.R. § 203.604(b) establishes the requirements that a mortgagee must fulfill before pursuing foreclosure when the mortgagor is in default. Included in these requirements is a face-to-face interview with the mortgagor. HUD regulation 24 C.F.R. § 203.604(c)(1)-(5) provides the exceptions to the face-to-face interview requirement. Relevant here is 24 C.F.R. §

3

203.604(c)(2) which states, "A face-to-face meeting is not required if: The mortgaged property is not within 200 miles of the mortgagee, its servicer, *or* a branch office of either." (emphasis added). Wells Fargo never conducted such a meeting with the Rabes, and in failing to do so, breached the Deed of Trust.

Wells Fargo alleges that the HUD General Servicing Frequently Asked Questions (FAQs) defined "branch office" as *servicing* office, and should receive *Chevron* deference. As Appellants argued in their initial brief, this should be rejected because the FAQs are outdated. Moreover, this argument should also be rejected because it misapplies *Chevron* deference. The United States Supreme Court established that if a regulation is ambiguous, courts should defer to the definition of the agency that created the regulation. This has come to be known as *Chevron* deference. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Chevron* deference should not apply here, as there is no ambiguity regarding the terms of this regulation. *Wells Fargo Bank, N.A. v. Isaacs*, 2010 WL 4884447 (Ohio Ct. App. 2010).

Wells Fargo argues that the Ohio case cited to by the Rabes is not binding precedent. (Appellee's Brief, pg. 6). This is true. However, while not binding precedent, the case is certainly persuasive with respect to the HUD regulation at issue. Indeed, the Ohio State Court of Appeals case, *Wells Fargo Bank, N.A. v. Isaacs*, directly addressed the question of what constituted a "branch office" under

4

the HUD regulations in question. Agreeing with the Eastern District of Virginia Court in *Kersey v. PHH Mortg. Corp.*, the *Isaacs* court noted that deference to an agency's interpretation of its own regulation is only granted where the regulation is ambiguous. *Wells Fargo Bank, N.A. v. Isaacs*, 2010 WL 4884447, at *2 (Ohio Ct. App. 2010); *Kersey v. PHH Mortg. Corp.*, 682 F. Supp. 2d 588 (E.D. Va. 2010). Regarding the question of what constituted a "branch office" under 24 C.F.R. § 203.604(b), the *Isaacs* Court concluded, "The definition of branch office is unambiguous." *Id.* Therefore, the *Isaacs* Court rejected Wells Fargo's contention that "branch office" should be interpreted to mean, "[a] branch office with servicing personnel." *Id.* Now, Wells Fargo asserts the same failed argument, and the Court should likewise reject it on the same ground.

Finally, Wells Fargo argues that because the Rabes failed to dispute Wells Fargo's evidence that Wells Fargo's nearest servicing branch office is not within 200 miles, the Rabes' claim should be barred as an "attempt to submit new 'evidence.'" (Appellee's Brief, pg. 6). Wells Fargo cites to the District Court's opinion to bolster this point. However, the District Court—as well as Appellee— erred in determining that Wells Fargo had carried its burden on this issue. Wells Fargo did, in fact, put forth evidence in the form of an affidavit asserting that Wells Fargo had no "servicing center" within 200 miles of the Property. (ROA.455). However, as previously stated, the exception in regulation 24 C.F.R. §

5

203.604(c)(2) is not limited to when a "servicing office" is not within 200 miles. The plain language of the regulation specifically includes a "branch office" of either the mortgagee or servicer. If the regulation is construed (as it should be) by its plain language, the face-to-face meeting was required if the mortgagee or servicer (here, Wells Fargo was both) had a "branch office" within 200 miles of the disputed property. Thus, the evidence set forth by Wells Fargo stating that it had no *servicing* center within 200 miles of the Property, even if not disputed or countered by the Rabes, is not sufficient to show that Wells Fargo satisfied the exception of 203.604(c)(2), and did not shift the burden to the Rabes to put on rebuttal evidence.

Therefore, the Rabes presented sufficient summary judgment evidence to create a genuine fact issue regarding the Wells Fargo's breach. The terms of the regulations are not ambiguous and are not entitled to *Chevron* deference. Finally, no new evidence is advanced by the Rabes, nor is it required, as Wells Fargo failed to establish before the District Court that it satisfied the exception to 24 C.F.R. § 203.604(b).

**Issue No. 3:      Wells Fargo violated the Texas Debt Collection Practices Act ("TDCA").**

    **Sub-Issue 3A:     TDCA §§ 392.304(a)(19) and 392.304(a)(8)**

Wells Fargo claims that it did not violate the Texas Debt Collection Practices Act ("TDCA") § 392.304(a)(19) and 392.304(a)(8) because "pursuant to

6

the Deed of Trust, Wells Fargo is entitled to collect a deficiency on any amount still due and owing even after foreclosure." (Appellee's Brief, pg. 8). Thus, Wells Fargo contends that its post-foreclosure letter to the Rabes does not misrepresent the character, extent, or amount of the Rabes' consumer debt because it still had the right to collect any deficiency post-foreclosure. However, this point is irrelevant to Wells Fargo's violation of the TDCA because the issue here is not whether Wells Fargo was entitled to collect a debt under the Deed of Trust, but whether it did so in compliance with the TDCA.

Here, the September 8, 2011 post-foreclosure letter was false and misleading regarding the character, extent, and amount of the Rabes' debt because there was no specific mention of the foreclosure sale that had already taken place on September 6, 2011. Instead, the letter contained vague statements regarding "changes in the status of your mortgage assistance." (ROA.297). The September 8, 2011 letter also indicated that Wells Fargo's Home Preservation Specialist, Jeffrey Barnes, was unable to help find the Rabes a mortgage assistance solution, "at this time," seemingly leaving open the possibility of a future time when Wells Fargo could assist the Rabes in preserving their home. (ROA.297). Thus, as of September 8, 2011, the Rabes could reasonably conclude that their outstanding debt to Wells Fargo was still the significantly larger sum before the foreclosure sale, and that there was still a possibility of working out a mortgage assistance

7

solution with Wells Fargo to stay in their home. However, the foreclosure sale had already taken place, so the statement "at this time" was false and misleading and misrepresented to the Rabes the character, extent, and amount of their debt. Therefore, the letter clearly was a false or misleading misrepresentation of the Rabes' debt, and the mere fact that Wells Fargo may be permitted to pursue a deficiency, if any, following a foreclosure sale does not change that fact.

### Sub-Issue 3B:     TDCA § 392.301(a)(8)

Wells Fargo's Appellee's Brief also argues that it did not violate section 392.301(a)(8) because "Wells Fargo did not violate the Deed of Trust, and was entitled to foreclose." (Appellee's Brief, pg. 9). However, having the right to collect a debt does not absolve the creditor from collecting the debt in compliance with the TDCA: "Because [Bank of America] had a statutory right to foreclose on plaintiff's property ***and exercised that right in a procedurally correct manner***, there is no violation of the TDCA . . ." *Voth v. Fed. Nat'l Mortg. Ass'n*, No. 3–10–CV–2116–G–BD, 2011 WL 1897759, at *4 (N.D. Tex. Apr. 22, 2011)(emphasis ours). Thus, the legislature and the courts have determined that the broad language in section 392.301(b)(3) applies when the foreclosure is implemented in an incorrect way.

As previously argued, Wells Fargo *did* breach violate the Deed of Trust when it failed to comply with the HUD regulations. Thus, Wells Fargo's

8

threatened action and non-compliance with the face-to-face meeting as required by the HUD regulations was by definition "an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8). Again, the issue is not whether Wells Fargo's "right to foreclose under the deed of trust matured," but whether Wells Fargo pursued the right in compliance with the TDCA. It did not. Therefore, Wells Fargo violated section 392.301(a)(8) when it threatened to (and then did) foreclose without complying with the HUD regulations and breaching the Deed of Trust.

**Issue No. 4:** **Suit to Quiet Title and Trespass to Try Title and Specific Performance.**

Wells Fargo's Appellee's Brief only briefly addressed the Rabes' suit to quiet title and trespass to try title claim: "Wells Fargo did not breach the Deed of Trust. Because the Rabes assert no other basis for their claims, summary judgment was proper." (Appellee's Brief, pg. 10). Wells Fargo addressed the Rabes' request for specific performance in a similarly brief manner: "Because the Rabes' claim for specific performance is based entirely on its claim that Wells Fargo breached the Deed of Trust, this claim also fails and summary judgment was proper." (Appellee's Brief, pg. 10). However, as previously discussed, Wells Fargo did breach the Deed of Trust. Therefore, the Rabes reassert their arguments related to Wells Fargo's breach of the Deed of Trust, and their arguments and authorities regarding their claim for suit to try title and trespass to try title, and their request

for specific performance. Accordingly, this matter should be remanded and Wells Fargo ordered to comply with the HUD regulations.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Appellants request that the Appellate Court reverse the Order Granting Summary Judgment and the final judgment, and remand this matter for further proceedings, and for such other and further relief to which they may be justly entitled.

Respectfully submitted,

  /s/    *J.B. Peacock, Jr.*
J.B. Peacock, Jr.
State Bar No. 15678500
David M. Vereeke
State Bar No. 20547500

**GAGNON, PEACOCK & VEREEKE, PLLC**
4245 North Central Expressway
Suite 250, Lock Box 104
Dallas, Texas 75205
Telephone:  (214) 824-1414
Facsimile:   (214) 824-5490
Email:  attorneys@gapslaw.com

ATTORNEYS FOR APPELLANTS

# CERTIFICATE OF SERVICE

I certify that on the 9th day of March, 2015, a true and correct copy of the foregoing document was served via electronic transmission via portable document format (.pdf) to the EM/ECF Internet web portal for this Court in this Case on the following parties:

    a. the attorney for Appellee-Defendant Wells Fargo Bank, NA, Richard Illmer at (214) 999-6170.

                                          /s/    *J.B. Peacock, Jr.*
                                        J.B. Peacock, Jr.
                                        Attorney of Record for Plaintiffs-Appellants

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.    This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because it contains 2,266 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (Times New Roman, 14-point) using Microsoft Word 2003.

Dated:   March 9, 2015

                                            /s/    *J.B. Peacock, Jr.*
                                        J.B. Peacock, Jr.
                                        Attorney of Record for Plaintiffs-Appellants